UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION
CAUSE NO._____

SHARON LAND,
    Plaintiff,

2 : 11 -cv- 0 1 3 2 WTL -WGH

Vs.

JOHN DOE, and JANE DOE, sued in their individual and official capacities, ANNE MURPHY, sued individually and in her capacity as SECRETARY of the INDIANA FAMILY & SOCIAL SERVICES ADMINISTRATION, and INTERNATIONAL BUSINESS MACHINES CORPORATION, sued in its individual and official capacities,
    Defendants.

## COMPLAINT WITH JURY DEMAND

### INTRODUCTION

This is a civil rights action filed by Plaintiff for damages under 42 U. S. C. §1983 for violation of her civil rights due to damages caused by the Defendants herein due to their refusal to maintain eligibility for Seth Land for Medicaid, leading to his causing serious physical and emotional injuries to Plaintiff because of said failure, all in violation of the Fourteenth Amendment of the United States constitution. The Plaintiff also states that Defendants are liable for the torts of aiding and abetting an assault and battery and of negligence. Defendant International Business Machines Corporation (hereinafter sometimes referred to as "IBM") was the state's privatization contractor and had full responsibility for the execution of the state's operations of the Indiana Family and Social Services Administration (hereinafter sometimes referred to as "FSSA") under a contract with the State, and is liable as a co-Defendant with the state.

1

## JURISDICTION

1. The Court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U. S. C. §§ 1331(1) and 1343.

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U. S. C. §1367.

## PARTIES

3. Plaintiff Sharon Land was a victim of the negligence of the Defendants herein, suffering personal injuries as a result of their refusing to process the renewal of Medicaid benefits for Seth Land.

4. Defendants John Doe and Jane Doe are sued in their individual and official capacities. They were employees of the Putnam County branch of the FSSA either directly or acting on its behalf as its employees or as the employees of International Business Machines Corporation, which was contracted to handle the Medicaid program for FSSA in Indiana. That branch employed an administrative system which involved one employee handling the public contact desk each day. John and Jane Doe were the daily desk officers who failed or refused to process the renewal application for Seth Land which led to the personal injuries to Plaintiff herein.

5. Anne Murphy was the Secretary and chief operating officer for FSSA at the time of the harm herein, and had ultimate responsibility for employment and supervision of its contractor IBM. she is sued in her individual and official capacities.

6. IBM administered the Putnam County and statewide operations of the FSSA Medicaid program. It is sued in its individual and official capacities.

7. All the parties herein have acted under colour of state law at all times relevant to this complaint. IBM has acted in conjunction with the state under colour of state law due to its being the primary actor herein due to its contract with the state to administer FSSA's Medicaid program.

## FACTS

8. Seth Land (hereinafter sometimes referred to as "Seth") is the now, and at all pertinent times hereto, adult son of Plaintiff.

9. Seth was initially diagnosed as schizophrenic when he stripped naked and burned his clothes at the middle of the Earlham College campus on April 15, 2007, where he was attending as a student.

10. After this incident, Seth was committed to Logansport State Hospital, a psychiatric facility.

11. During his assessment, it was learned that Seth, without his mother's knowledge, and prior to her divorce from Seth's father, had been seriously and serially sexually molested by his father, and his paternal grandfather, who was blind in one eye.

12. Since the Earlham incident, Seth has had a compulsion to strip and have sex with men.

13. Seth has been self-destructive and violent to others when off psychiatric medication.

14. This has led Seth to extended incarceration periods, and also several lengthy commitments to hospitals.

15. During one period of incarceration, he gouged out his eye with a toothbrush.

16. After the aforesaid 2007 incident, Plaintiff was appointed Guardian for Seth.

17. Seth was also placed on Medicaid at about the same time.

18. He was released from jail on January 18, 2009.

19. At that time his Medicaid re-eligibility determination date was approaching. He had missed an appointment due to his incarceration.

20. Despite the intervention of the Guardian, Defendant John Doe refused to process Seth for Medicaid renewal on January 29, 2009.

21. This caused his coverage to expire, and wrongfully forced the Guardian to reapply for Medicaid for Seth.

22. From that date until May 15, 2009, John and Jane Doe, acting as the employees of the FSSA and/or IBM, refused to reprocess the Medicaid application for Seth or the forced new application.

23. This occurred despite Plaintiff bringing all requested documents several times, most or all of which were already in Seth's file.

24. During the January to May period, the Guardian came to the FSSA office 2 or 3 or more times each week, bringing multiple submissions of a plethora of documents requested by John and Jane Doe, including bank statements and other proofs of eligibility, only for them to be lost or disregarded by FSSA, or IBM, and/or having been lost from the file earlier.

25. Meanwhile, Seth's medications eventually wore off.

26. The Guardian constantly asked for diligent processing of the claims in each of the above repeated visits to the FSSA/IBM office, but was only responded to by repeated requests for the same documents she had already submitted and/or which were already in the file.

27. Neither entity acted despite the Guardian repeatedly advising them of Seth's mental history.

28. At all times Seth was eligible for continuing and uninterrupted Medicaid benefits, which were wrongfully denied by Defendants.

29. Nevertheless, he was removed by the Defendants from Medicaid on or after January 29, 2009, and never placed back on those rolls prior to May 15, 2009.

30. The Guardian tried in vain for places to house Seth for several months, but none would place him without Medicaid payments.

31. Seth's mental condition deteriorated steadily, and the Guardian could not afford his $800 a month anti-psychotic medicine.

32. Seth had seemed quiet and introspective and withdrawn, and there was no hint that a violent outbreak might occur. The Guardian feared for Seth's safety, and, having exhausted all alternative sources solely due to the failure to be able to pay with Medicaid, was forced to take Seth into her home.

33. On May 15, 2009, Plaintiff had gone to bed. Seth came in and said his voices had told him to gouge out her eyes, and he did, despite Plaintiff's valiant attempt to protect herself. In the ensuing fight, he also broke one of Plaintiff's fingers, a rib and her nose, one eye was fully gouged out and the other, and surrounding tissue, was severely damaged. In addition, she was caused to suffer from numerous back and neck problems, mobility issues and cuts and bruises and may have been sexually assaulted.

34. Seth was given the necessary anti-psychotic medicine once incarcerated for this incident, and has had no further incidents of violence.

35. The state and its contractor, IBM, at all times, and at least in time to avoid the harm herein, possessed all documentation necessary to renew the Medicaid of Seth Land herein, and knew or should have known the danger of leaving him unmedicated.

36. That said Defendants acted improperly in performing the mere administrative act of renewing said Medicaid, and the refusal to do so was the cause of the violence herein which led to the losses by Plaintiff.

37. That due to the documentation already in Seth's file from his previous Medicaid eligibility, coupled with the documentation provided numerous times by Plaintiff, the determination that Seth Land was eligible for Medicaid was a ministerial function.

38. Nothing had intervened to make him ineligible for renewal or disqualified for benefits for any cause.

39. That Plaintiff has also been rendered unemployable due to the severe impairment of her eyesight and other physical and emotional damage.

40. That the action/inaction by the Defendants herein has deprived Plaintiff of her civil rights under the United States Constitution.

41. That Plaintiff did nothing to provoke the attack upon her by Seth Land.

42. That, after the aforesaid attack, the Defendants promptly approved the Medicaid eligibility of Seth Land.

43. That, immediately upon his medicine being restarted, and ever since, Seth has had no violent behavior.

44. That all Defendants herein, jointly and severally, are liable to the Plaintiff for all damages suffered by her due to their refusal to process the Medicaid renewal and/or forced reapplication of Seth Land.

45. The failure of IBM and FSSA to properly discipline the unknown employee Defendant John and Jane Does herein for their refusal to renew the Medicaid of Seth Land so that he could receive anti-psychotic medicine contributed to the injuries to Plaintiff herein.

## CLAIMS FOR RELIEF

46. The actions of all Defendants herein, in failure of executing a ministerial task, caused the infliction of physical injury, and mental and emotional distress upon the Plaintiff herein.

47. The actions of all Defendants herein led to the aforesaid injuries inflicted upon the Plaintiff, all of which were foreseeable.

48. The deliberate ignoring of the safety of Plaintiff herein by the Defendants directly led to and or contributed to the proximate causation of her injuries, thus depriving her of civil rights guaranteed to her under the Fourteenth Amendment to the United States Constitution without due process of law, and also denying to her the equal protection of the laws.

49. The aforesaid failure or refusal to reprocess and continue the Medicaid entitlements of Seth Land, and the requirement made by Defendants upon Plaintiff to submit multiple copies of unnecessary documents not required by the law to obtain relief, which delayed the forced reapplication for Medicaid benefits, constituted the torts of negligence, duress and the negligent infliction of physical, mental and emotional injury upon the Plaintiff all of which constitute actionable wrongs under Indiana law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. Award compensatory damages sufficient to compensate the Plaintiff for her loss herein, including, but not limited to, expenses due to the assault, for losses to her health, for disfigurement, for loss of earning capability, and for the effect of the

physical, mental and emotional trauma inflicted herein, all to be levied jointly and severally against all Defendants herein.

2. Award punitive damages jointly and severally against all Defendants in an amount sufficient to deter future officials from the refusal to do their duties, especially when dealing with violent and volatile recipients.

3. Award Plaintiff her attorney's fees and costs of litigation.

4. Grant such other relief as it may appear that Plaintiff is entitled.

Plaintiff demands that all issues be heard before a jury herein.

Dated this 12TH day of May, 2011.

Brent Welke (Indiana bar number 15671-45)
P. O. Box 55058
Indianapolis, Indiana 46205
317-748-7772
brentwelke@att.net