UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SHARON LAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:11-cv-00132-WTL-DKL |
| ) | |
| JOHN DOE, and JANE DOE, sued in their ) | |
| individual and official capacities, ANNE ) | |
| MURPHY, sued individually and in her capacity ) | |
| as SECRETARY[1] of the INDIANA FAMILY & ) | |
| SOCIAL SERVICES ADMINISTRATION, and ) | |
| INTERNATIONAL BUSINESS MACHINES ) | |
| CORPORATION, sued in its individual and ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants, Anne Murphy, sued in her individual capacity, and Michael A. Gargano, sued in his official capacity as Secretary of the Indiana Family & Social Services Administration ("State Defendants"), by counsel, Gregory F. Zoeller, Attorney General of Indiana, by Adam Clay, Deputy Attorney General, respectfully file this memorandum in support of their Motion to Dismiss.

**I.    Introduction**

The Plaintiff, Sharon Land, has sued Anne Murphy in her individual capacity as former Secretary of the Indiana Family and Social Services Administration ("FSSA") as well as Michael Gargano in his official capacity as current secretary of FSSA. The Plaintiff's claims arise out of an incident occurring on May 15, 2009. *See* Docket 1 at ¶ 33. On that date, the Plaintiff was

---

[1] Michael A. Gargano's appointment as replacement for Anne W. Murphy, former Secretary of Indiana Family and Social Services Administration, became effective on November 15, 2010.

attacked by her son, Seth Land, who was living with her at the time. *See id*. The Plaintiff has sued unnamed workers, John and Jane Doe[2], the State Defendants as well as International Business Machines Corporation ("IBM"), alleging that they collectively mishandled Seth Land's Medicaid application, causing the injuries the Plaintiff sustained on May 15, 2009. *See id*. at ¶¶17-29, 35-38. The Plaintiff has sued pursuant to 42 U.S.C. § 1983 alleging that the Defendants deliberately ignored the safety of the Plaintiff, thus violating her civil rights under the Fourteenth Amendment, as well as denying her equal protection of the laws. *See id*. at ¶ 48. Additionally, the Plaintiff alleges negligence, duress, and negligent affliction of physical, mental and emotional injury under Indiana law. *See id*. at ¶ 49. The Plaintiff also alleges the Defendants are guilty of aiding and abetting an assault and battery. *See id*. ("Introduction"). For the below reasons, the claims against the State Defendants should be dismissed.

## II.     Legal Standard for Motion to Dismiss

The State Defendants have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiff's Complaint for failure to state a claim against the State Defendants upon which relief can be granted. To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The 'short and plain statement' must be enough "to give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and noting that the Supreme Court in *Twombly*, 550 U.S. at 562-63, retired the common formulation that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

---

[2] At this time, it is not known whether the workers were Division of Family Resource employees, or contractors.

"[T]he factual allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Killingsworth*, 507 F.3d at 618 (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (other citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). The Supreme Court has recognized in *Twombly* and *Iqbal* that conclusory allegations are not entitled to be assumed true. *Ashcroft*, 129 S. Ct. at 1951 (citing *Twombly*, 550 U.S. at 554-555). "[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Id.* (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (internal quotations omitted)). "In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006)).

**III.    Argument**

    **A.    SECTION 1983 CLAIMS**

To begin, it does not appear that the Plaintiff has properly pled any claims against the State Defendants[3] under 42 U.S.C. § 1983. The Supreme Court has held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). The

---

[3] Because the Complaint does not allege that any particular FSSA policy or rule has violated the Plaintiff's civil rights, *see generally* Docket 1, the personal and official capacity claims are handled collectively for Section III(A) of this brief.

Complaint does not allege that the FSSA's secretary, in either personal or official capacity, ever took any direct action concerning Seth Land's Medicaid application, and at best, alleges negligence in the oversight of employees handling the application. Simply stated, this is not enough to establish that the State Defendants have violated the Plaintiff's due process rights.

Even assuming that *Daniels* does not apply here, the Plaintiff has failed to state a due process claim. In order to properly plead a due process violation, "a plaintiff must show: (1) the existence of a cognizable property interest; (2) deprivation of that interest; and (3) a denial of due process." *Licari v. City of Chicago*, 298 F.3d 664, 668 (7th Cir. 2002) (citing *Schroeder v. City of Chicago,* 927 F.2d 957, 959 (7th Cir.1991); *Buttitta v. City of Chicago,* 9 F.3d 1198 (7th Cir.1993)).

Here, it is unclear what property interest the Plaintiff is asserting that she has been deprived of. Medicaid benefits are suspended upon a person's incarceration. *See* Indiana Program Policy Manual § 2237.10.00; *see also* 42 C.F.R. § 435.1009. As such, Seth Land was required to recertify his eligibility for Medicaid benefits upon his release.[4] The Plaintiff has no property interest in her son's Medicaid benefits for which he was not yet qualified.[5] *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576 (1972) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already* acquired in specific benefits.") (emphasis added). Additionally, Plaintiff does not allege that the State Defendants denied her an opportunity for a fair hearing or cite any specific state or federal law that was allegedly violated by the State Defendants. *See generally* Docket 1.

---

[4] The Plaintiff pled that Seth Land missed an appointment concerning his re-eligibility determination. *See* Docket 1 at ¶ 19.

[5] Additionally, because the Plaintiff has not pled this action as Seth's guardian, she similarly has no property interest in any Medicaid benefits for which he was or might have been qualified.

Further, a denial of due process must be more than a random and unauthorized act of a state employee. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382-83 (7th Cir. 1988) ("Under *Parratt*[*v. Taylor*]*,* when deprivations of property are effected through random and unauthorized actions of state employees and the state provides an adequate postdeprivation remedy, the requirements of due process are satisfied and the plaintiff may not maintain a § 1983 suit in federal court."). In the *Wilson* case, the Seventh Circuit found that Indiana's Tort Claim Acts provided a plaintiff a sufficient remedy for random and unauthorized acts, obviating the Plaintiff's ability to challenge such acts pursuant to Section 1983. *See id.*

Neither has the Plaintiff pled a valid equal protection claim against the State Defendants. "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994) (citing *Shango v. Jurich,* 681 F.2d 1091, 1103-04 (7th Cir. 1982); *Washington v. Davis,* 426 U.S. 229, 247-48 (1976)). The Plaintiff's complaint is void of any allegations of purposeful discrimination, and the Plaintiff has failed to identify any similarly situated class of people who were treated differently. *See Lane-El v. Indiana Dept. of Correction*, 1:06-CV-0251-LJM-JMS, 2008 WL 504427 (S.D. Ind. Feb. 20, 2008) ("In order to sufficiently plead a claim for a violation of the equal protection component of the Fourteenth Amendment under § 1983, plaintiffs must allege that they received different treatment from other similarly situated individuals or groups.") (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985)). The Plaintiff's allegations that the State Defendants made "repeated requests for the same documents she had already submitted and/or which were already in the file" do not rise to the level of an equal protection violation as a matter of law. See *Newsome v. McElhinney*, 1990 WL

6813 (N.D. Ill. Jan. 10, 1990) ("The Equal Protection Clause will not reach erroneous or even arbitrary administration of state powers; rather, its reach is limited to instances of "invidious classification" of the aggrieved class.") (citing *Shango*, 651 F.2d at 1104).

The Plaintiff has not stated any valid claims against the State Defendants under Section 1983 for which relief may be granted. Those claims against the State Defendants should be dismissed.

### 1. Anne Murphy Is Not a Proper Defendant to the Plaintiff's Section 1983 Claims

The Plaintiff has sued Anne Murphy in her individual capacity as the former Secretary of the FSSA at the time of the alleged deprivation of the Plaintiff's constitutional rights. However, in addition to the infirmities described above, the Plaintiff has not pled sufficient facts to show that Anne Murphy is a proper defendant to the Plaintiff's Section 1983 claims. The Plaintiff has not alleged that Anne Murphy had any direct involvement with the events leading up to the May 15, 2009 incident. *See generally* Docket 1. Instead, the Plaintiff only alleges that Anne Murphy "had ultimate responsibility for employment and supervision of its contractor IBM." *See id*. at ¶ 5.

In order to establish an individual capacity claim under 42 U.S.C. § 1983, the Plaintiff must show "(1) that the defendants were acting under color of state law; and (2) that the conduct of the defendants deprived the plaintiff of a federal right." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on separate grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The Plaintiff must also allege facts that the Defendant was personally involved in the deprivation of her constitutional rights. *See Gossmeyer v. McDonald,* 128 F.3d 481, 494 (7th Cir.1997). This requires "a causal connection, or affirmative link, between the misconduct complained of and the official sued." *Estate of Porter by Nelson v. Illinois,* 36 F.3d 684, 688 (7th Cir.1994). Here, it is

clear that the Plaintiff has not alleged that Anne Murphy, through any action taken herself, deprived the Plaintiff of a federal right. Instead, it appears that the Plaintiff is seeking to establish liability under Section 1983 under a theory of *respondeat superior*. However, Section 1983 does not recognize liability under such a theory. *See McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984) (finding ". . . the doctrine of *respondeat superior,* which makes the employer liable without fault on his part for torts committed by his employees in the furtherance of their employment, not applicable in actions under section 1983") (citing *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691-94 (1978)); *cf. Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982) ("A supervisory official satisfies the personal responsibility requirement if he or she acts with a deliberate or reckless disregard of the plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his or her direction or with his or her knowledge or consent."). Since the Plaintiff has not alleged that Anne Murphy ever had knowledge of any of the alleged facts, or ever acted with regard to the Plaintiff, she has not stated a Section 1983 claim against Anne Murphy in her individual capacity.[6]

### 2. Section 1983 Does Not Permit Official Capacity Suits for Damages

In addition to suing Anne Murphy in her personal capacity, the Plaintiff has also sued her in her official capacity as Secretary of FSSA. *See* Docket 1 at ¶ 5. As mentioned earlier, Michael A. Gargano is currently the Secretary of FSSA. The Plaintiff has sued for compensatory and punitive damages, but has not raised any claims for declaratory or injunctive relief. *See*

---

[6] The closest the Plaintiff ever comes to alleging action by Anne Murphy is the statement in paragraph 15 – "[t]he failure of IBM and FSSA to properly discipline the unknown employee John and Jane Doe herein for their refusal to renew the Medicaid of Seth Land so that he could receive anti-psychotic medicine contributed to the injuries to Plaintiff herein." *See* Docket 1 at ¶ 45. However, this allegation is hard to understand in that it is unclear how Plaintiff would have any knowledge of a failure to discipline an unknown employee. Further, failure to discipline an employee for conduct that she is not aware of does not rise to the level of personal involvement necessary for a Section 1983 claim.

Docket 1 at 5-6.  However, "states and state agencies, as well as state officials acting in their official capacities, are not 'persons' for purposes of § 1983 and are immune from suit." *Flayter v. Wisconsin Dept. of Corr.*, 16 F. App'x. 507, 509 (7th Cir. 2001) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *Ryan v. Illinois Dep't of Children and Family Servs.,* 185 F.3d 751, 758 (7th Cir. 1999)).  This means that "State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 82 n.24 (1997) (citing *Will,* 491 U.S., at 71, and n. 10).  As the Plaintiff has not requested injunctive or declaratory relief, her Section 1983 claims against Michael A. Gargano in his official capacity must be dismissed.

### B.   The Plaintiff's Negligence Claims

The Plaintiff's primary state law claim is negligence.  The Plaintiff alleges that unnamed employees of either IBM or FSSA unlawfully required the Plaintiff to provide information and documents concerning Seth Land's Medicaid application, and, but for the unlawful delay caused by such requests, Seth Land would have gotten medication and the events of May 15, 2009 would never have occurred.[7]  Even if taken as true, the Plaintiff has failed to state a negligence claim against the State Defendants, Anne Murphy in her individual capacity and Michael A. Gargano in his official capacity as Secretary of FSSA..

#### 1.   Indiana's Negligence Standard

Under Indiana law, a plaintiff must establish "(1) the defendant's duty to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff proximately caused by the breach." *Stratmeyer v. United States*, 67 F.3d 1340, 1345 (7th Cir. 1995) (citing *Bailor,* 51 F.3d at 683; *Greathouse v. Armstrong,* 616 N.E.2d 364, 368 (Ind. 1993)).  The defendant's obligation is comprised of three

---

[7] The Plaintiff does not specify what statutes or regulations made the request for information unlawful.

factors - "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id*. at 1346 (quoting *Webb,* 575 N.E.2d at 995).

The Plaintiff describes the duty as the "failure of executing a ministerial task," comprising of "refusal to reprocess and continue the Medicaid entitlements of Seth Land[.]" Docket 1 at ¶ 46, 49.  The alleged breach of that duty appears to be "the requirement made by Defendants upon Plaintiff to submit multiple copies of unnecessary documents required by law to obtain relief[.]" *Id*. at ¶ 49.  The Plaintiff alleges that the refusal of the Defendants to renew the Medicaid of Seth Land "was the cause of the violence herein which led to the losses by Plaintiff," and that the Defendants "knew or should have known the danger of leaving [Seth Land] unmedicated." *Id*. at ¶ 35-36.

### 2. The State Defendants Responsibility With Regard to the Unnamed Employees

The Complaint does not state whether the unknown Jane and John Doe employees worked for the Division of Family Resources[8] ("DFR") or a contractor.  *See* Docket 1 at ¶ 4. Even assuming the unknown employees were DFR employees, the State Defendants held no supervisory authority over them.  DFR employees[9] are responsible to the division's Director, *see* Ind. Code § 12-13-2-3, who is appointed by FSSA's Secretary with the Governor's approval.  *See* Ind. Code § 12-13-2-1 ("The division shall be administered by a director appointed under IC 12-8-8-2"); Ind. Code § 12-8-8-1 ("Subject to the approval of the governor, the secretary: (1) shall appoint each director; and (2) may terminate the employment of a director.").  The Director is "responsible to the secretary for the operation and performance of the director's division," but "[t]he administrative and executive duties and responsibilities of the division" belong to DFR's

---

[8] The Division of Family Resources is responsible for "[t]he administration of old age assistance, aid to dependent children, and assistance to the needy blind and *persons with disabilities*, excluding assistance to children with special health care needs."  Ind. Code § 12-13-5-1 (emphasis added).
[9] Similarly, persons contracted to process applications fall under DFR's purview.  *See* Ind. Code § 12-13-5-14.

Director, not FSSA's Secretary. *See* Ind. Code § 12-8-8-2(b); 12-13-2-3(3). Therefore, the Secretary does not oversee DFR employees or DFR contractors.

### 3. The Plaintiff Has Failed to State a Claim for Negligence Against the State Defendants

The Plaintiff has failed to state a claim for negligence against the State Defendants as the Plaintiff has not alleged any duty of care between the State Defendants and the Plaintiff. The Secretary of FSSA has no official authority over DFR operation processes, see *infra* Section III(B)(2), and Plaintiff has not alleged that Anne Murphy ever took any action with regard to Seth Land's Medicaid application prior to the Plaintiff's injuries.

Further, proximate cause does not exist between the Plaintiff's injuries and any action by the State Defendants. "A negligent act is said to be the proximate cause of an injury 'if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated.'" *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1054 (Ind. 2003) (quoting *Bader v. Johnson,* 732 N.E.2d 1212, 1218 (Ind. 2000)). "At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct." *Id.* Here, the Plaintiff has not alleged that any action was taken by the State Defendants prior to the events of May 15, 2009. *See generally* Docket 1. In fact, the Plaintiff has not even alleged that the State Defendants were aware of any of the events that occurred prior to May 15, 2009.

If the Plaintiff is instead attempting to state a *respondeat superior* claim for negligence against the State Defendants, she is barred. "[A]n employer is liable for the acts of its employees which were committed within the course and scope of their employment." *City of Fort Wayne v. Moore,* 706 N.E.2d 604, 607 (Ind. Ct. App. 1999). "Acts for which the employer is not responsible are those done on the employee's own initiative, with no intention to perform it as

part of or incident to the service for which he is employed." *Interim Healthcare of Fort Wayne, Inc. v. Moyer ex rel. Moyer*, 746 N.E.2d 429, 432 (Ind. Ct. App. 2001). Thus, in order for the State Defendants to be liable under *respondeat superior*, the unnamed workers would have to be employees of the State Defendants operating in the scope of their employment. As shown above, *see supra* Section III(B)(2), the State Defendants do not oversee DFR's employees or contractors.

Thus, the State Defendants, representing FSSA's secretary at the time of the events in both individual and official capacities, are not liable for the unnamed employee's actions, whether the alleged actions were taken within or outside the scope of the unnamed employee's employment.

### C.     Remaining State Tort Claims

#### 1.     The Plaintiff Has Not Adequately Pled an Aiding and Abetting Claim Against the State Defendants

The Plaintiff has alleged that the State Defendants[10] "are liable for the tort[] of aiding and abetting an assault and battery." *See* Docket 1. Under Indiana law, "he who counsels, advises, abets, or assists another to commit a tort, or joins in its commission, is responsible for all the injury done, whether specifically authorized or not." *Bates Motor Transp. Lines v. Mayer*, 14 N.E.2d 91, 94 (Ind. 1938) (quoting *Cleveland, etc. R. Co. v. Simpson*, 104 N.E. 301, 306 (Ind. 1915)). The Northern District of Indiana, in applying Indiana law, has stated that " Indiana courts have adopted section 876 of the *Restatement (Second) of Torts* concerning aiding and abetting and concerted action generally for both intentional torts and negligence actions." *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 978-79 (N.D. Ind. 2008). Section 876 of the Restatement states that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or

---

[10] The Plaintiff does not differentiate between the individual and official capacities of FSSA's Secretary for her state tort claims.

pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Restatement (Second) of Torts* § 876 (1965).

On the face of the complaint, it is apparent that the Plaintiff has not stated a claim that the State Defendants "aided and abetted" Seth Land's assault and battery on the Plaintiff. There is no allegation that the State Defendants acted: (1) in concert with Seth Land, (2) pursuant to a common design with Seth Land, or (3) gave substantial assistance or encouragement to Seth Land. *See generally* Docket 1. The Plaintiff has failed to state a claim against the State Defendants concerning aiding and abetting an assault and battery, and those claims should be dismissed as to the State Defendants.

### 2. The Plaintiff Has Not Adequately Pled a Duress Claim Against the State Defendants

The Plaintiff alleges that the "failure or refusal to reprocess and continue the Medicaid entitlements of Seth Land, and the requirement made by Defendants upon Plaintiff to submit multiple copies of unnecessary documents not required by the law to obtain relief, which delayed the forced reapplication for Medicaid benefits, constituted . . . duress[.]" *See* Docket 1 at ¶ 49. "Duress is a species of fraud in which compulsion in some form takes the place of deception in accomplishing the injury." *Denney v. Reber*, 114 N.E. 424, 426 (Ind. Ct. App. 1916) (citing COOLEY ON TORTS, vol. 2 (3d Ed.) pp. 966, 967). The Plaintiff has not alleged that the State Defendants in any way forced Seth Land to commit the assault and battery of the Plaintiff. The Plaintiffs have not adequately pled facts to establish a claim against the State Defendants for duress.

### D. The Plaintiff Has Failed to State A Claim for Negligent Infliction of Emotional Distress

The Plaintiff alleges that the State Defendants are liable for "negligent infliction of physical, mental, and emotional injury[.]" *See* Docket 1 at ¶ 49. In *Alexander v. Scheid*, the Indiana Supreme Court reiterated that "[w]hen a . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person," a plaintiff may proceed with a claim for negligent infliction of emotional distress. *Alexander v. Scheid*, 726 N.E.2d 272, 283 (Ind. 2000) (quoting *Shuamber v. Henderson,* 579 N.E.2d 452 (Ind. 1991)). Thus, in order to properly state a claim for negligent infliction of emotional distress the Plaintiff is required to properly plead a claim of negligence. However, as the Plaintiff has failed to properly state a claim of negligence against the State Defendants, *see supra* Section III(C), the claim for negligent infliction of emotional distress must similarly fail.

## IV. Conclusion

For the foregoing reasons, the State Defendant respectfully requests the Court dismiss the claims against the State Defendants contained in Plaintiff's complaint.

Respectfully submitted,

GREGORY F. ZOELLER
Indiana Attorney General
Attorney No. 1958-98

Date: July 5, 2011         By: *s/ Adam Clay*
Adam Clay
Deputy Attorney General
Attorney No. 28498-49

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204-2770

Telephone: (317) 234-2900  
Fax: (317) 232-7979  
Email: Adam.Clay@atg.in.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Brent Welke | Andrew W. Hull |
| WELKE LAW FIRM | HOOVER HULL LLP |
| BrentWelke@att.net | AWHull@hooverhull.com |
| | |
| Laurie E. Martin | Anne M. Sidrys, P.C. |
| HOOVER HULL LLP | KIRKLAND & ELLIS LLP |
| LMartin@hooverhull.com | Anne.Sidrys@kirkland.com |
| | |
| Wendy Netter Epstein | Zachary D. Holmstead |
| KIRKLAND & ELLIS LLP | KIRKLAND & ELLIS LLP |
| Wendy.Epstein@kirkland.com | Zachary.Holmstead@kirkland.com |
| | |
| Diana M. Watral | |
| KIRKLAND & ELLIS LLP | |
| Diana.Watrel@kirkland.com | |

                                            *s/ Adam Clay*
                                            Adam Clay
                                            Deputy Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:  (317) 234-2900
Fax:  (317) 232-7979
Email:  Adam.Clay@atg.in.gov