UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHARON LAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11-cv-0132-WTL-DKL |
| | ) | |
| vs. | ) | |
| | ) | Judge William T. Lawrence |
| JOHN DOE & JANE DOE, ANNE MURPHY, | ) | |
| SECRETARY OF INDIANA FSSA, IBM | ) | Magistrate Denise K. LaRue |
| CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**IBM'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Andrew W. Hull
HOOVER HULL LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Telephone: (317) 822-4400

Steven D. McCormick, P.C.
Anne M. Sidrys, P.C.
Wendy Netter Epstein
Diana M. Watral
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000

Dated:  July 5, 2011

*Attorneys for Defendant International
Business Machines Corporation*

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................4

BACKGROUND ................................................................................................5

STANDARD OF REVIEW ................................................................................6

ARGUMENT ....................................................................................................7

I.      PLAINTIFF'S § 1983 CLAIM SHOULD BE DISMISSED BECAUSE
        PLAINTIFF CANNOT ESTABLISH THAT SHE WAS DENIED A RIGHT
        SECURED BY THE CONSTITUTION.....................................................7

        A.      Plaintiff Has Not Alleged A Claim Under The Equal Protection Clause. ..............7

        B.      The Due Process Clause Does Not Protect Citizens Against Violence
                Inflicted By Private Actors. .........................................................8

                1.      Plaintiff's due process claim is precluded by *DeShaney*. ...........8

                2.      The limited exceptions to *DeShaney* do not apply......................9

        C.      To The Extent Plaintiff Alleges A Procedural Due Process Claim, It Fails
                As A Matter Of Law. ..................................................................12

II.     PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE
        IBM DID NOT OWE A DUTY TO PLAINTIFF. ........................................12

        A.      Plaintiff Did Not Have A "Relationship" With IBM Sufficient To
                Establish A Legal Duty...............................................................13

        B.      IBM Could Not Have Reasonably Foreseen That Its Alleged Failure To
                Process Seth's Medicaid Benefits Would Cause Plaintiff's Injuries. ...................13

        C.      Public Policy Considerations Should Preclude This Court From Finding
                That IBM Owed Plaintiff A Duty. ...................................................15

III.    PLAINTIFF'S REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF
        LAW. .................................................................................................16

        A.      Plaintiff's Aiding And Abetting Claim Fails To State A Claim..........................16

        B.      Plaintiff's Duress Claim Fails Because Duress Is A Defense Under Indiana
                Law, Not A Cause of Action..........................................................17

        C.      Plaintiff's Miscellaneous State Law Claims Fail..................................17

CONCLUSION..................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ............................................................................................... 4

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................ 3

*Bailor v. Salvation Army*,
  51 F.3d 678 (7th Cir. 1995)................................................................................ 11

*Baxter v. ISTA Ins. Trust*,
  749 N.E.2d 47 (Ind. Ct. App. 2001) ............................................................. 10, 12

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ............................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 4

*Bowers v. Fédération Internationale de L'Automobile*,
  489 F.3d 316 (7th Cir. 2007)............................................................................... 3

*Buchanan-Moore v. Cnty. of Milwaukee*,
  570 F.3d 824 (7th Cir. 2009)............................................................................ 6, 7

*Cerna v. Prestress Services Ind., LLC*,
  2011 WL 1884547 (N.D. Ind. May 18, 2011)...................................................... 14

*DeShaney v. Winnebago Cnty. Dept. of Social Services*,
  489 U.S. 189 (1989).................................................................................. 1, 5, 6, 8

*Dollar Inn, Inc. v. Slone*,
  695 N.E.2d 185 (Ind. Ct. App. 1998) .................................................................. 9

*Estate of Allen v. City of Rockford*,
  349 F.3d 1015 (7th Cir. 2003)............................................................................. 7

*Hanover Grp., Inc. v. Manufactured Home Cmtys. Inc.*,
  2000 WL 1124877 (S.D. Ind. July 12, 2000) ...................................................... 2

*Henson v. CSC Credit Servs.*,
  29 F.3d 280 (7th Cir. 1994)................................................................................. 2

*Herdt v. Civil City of Jeffersonville, Ind.*,
  2011 WL 1600518 (S.D. Ind. Apr. 27, 2011) ...................................................... 4

*Herro v. City of Milwaukee*,
  44 F.3d 550 (7th Cir. 1995)................................................................................. 4

*Hickey, III v. O'Bannon*,
  287 F.3d 656 (7th Cir. 2002)............................................................................... 3

*Hodgson v. Miss. Dept. of Corrections*,
    963 F. Supp. 776 (E.D. Wisc. 1997) ............................................................... 6

*Intelecom, Inc. v. Cable & Wireless USA, Inc.*,
    2000 WL 33309374 (S.D. Ind. Oct. 10, 2000) ................................................ 3

*J.O. v. Alton Cmty. Unit Sch. Dist. 11*,
    909 F.2d 267 (7th Cir. 1990) ......................................................................... 6

*King v. East St. Louis School Dist. 189*,
    496 F.3d 812 (7th Cir. 2007) ..................................................................... 7, 8

*Lohmiller v. State*,
    884 N.E.2d 903 (Ind. Ct. App. 2008) .......................................................... 14

*Nance v. Holy Cross Counseling Grp.*,
    804 N.E.2d 768 (Ind. Ct. App. 2004) .......................................................... 11

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ...................................................................................... 4

*Robertson v. Office of Shelby County Sheriff*,
    2003 WL 21696540 (S.D. Ind. July 14, 2003) ............................................... 6

*Sandage v. Bd. of Commissioners of Vanderburgh Cnty., Ind.*,
    2008 WL 345977 (S.D. Ind. Feb. 6, 2008), *aff'd* 548 F.3d 595 (7th Cir. 2008) ................... 7, 8

*Severson v. Bd. of Trustees of Purdue Univ.*,
    777 N.E.2d 1181 (Ind. Ct. App. 2002) .......................................................... 6

*Stevens v. State*,
    422 N.E.2d 1297 (Ind. Ct. App. 1981) ......................................................... 13

*Stevens v. Umsted*,
    131 F.3d 697 (7th Cir. 1997) ......................................................................... 8

*Stockberger v. United States*,
    225 F. Supp. 2d 949 (S.D. Ind. 2002) .......................................................... 12

*Trzeciak v. State Farm Fire & Casualty Co.*,
    2011 WL 831126 (N.D. Ind. Mar. 1, 2011) .................................................. 14

*Waubanascum v. Shawano Cnty.*,
    416 F.3d 658 (7th Cir. 2005) ..................................................................... 5, 7

*Webb v. Jarvis*,
    575 N.E.2d 992 (Ind. 1991) ............................................................... 9, 10, 11

*Williams v. Cingular Wireless*,
    809 N.E.2d 473 (Ind. Ct. App. 2004) .................................................. 10, 11, 12

*Woodard v. Jackson*,
    2004 WL 771244 (S.D. Ind. Mar. 25, 2004) ................................................ 13

**Statutes**

42 U.S.C. § 1983 ............................................................................................ 7

Indiana Code § 35-41-2-4 ........................................................................................... 16

**Rules**

Fed. R. Civ. P. 12(b) .................................................................................................... 5

Fed. R. Civ. P. 12(b)(6)................................................................................................ 6

**INTRODUCTION**

On May 15, 2009, plaintiff Sharon Land's schizophrenic son (Seth Land) violently attacked her – gouging out her eyes and breaking several of her bones.  Plaintiff now claims that the State of Indiana's Indiana Family and Social Service Administration, Anne Murphy, and unnamed employees (the "State defendants") and the State's contractor IBM should somehow be held responsible and liable for this alleged criminal act and her physical injuries.  Plaintiff's theory is that, had the State defendants and its contractor IBM provided her son with Medicaid benefits, plaintiff would have been able to pay for and provide him with his schizophrenia medication and the violent outbreak would not have occurred.  Not only does plaintiff's claim hinge on any number of unsupported presumptions, but her allegations do not (and cannot) state a viable claim against IBM.

*First*, plaintiff claims that IBM – a private actor – violated her due process rights under § 1983 and is liable for the injuries caused by her son's intervening criminal act.  Specifically, plaintiff alleges that IBM deliberately ignored her safety when it failed to process her son's Medicaid renewal application.  This claim fails as a matter of law since, as the Supreme Court has held, the Due Process Clause does not impose a duty to protect individuals from violence or harm by private actors.  *DeShaney v. Winnebago Cnty. Dept. of Social Services*, 489 U.S. 189 (1989).

*Second*, plaintiff's claim of negligence fails because IBM did not owe any duty to plaintiff.  Indeed, IBM did not have any relationship with plaintiff.  Moreover, IBM could not have reasonably foreseen that a purported failure to process a Medicaid application in accordance with its contract with the State of Indiana would cause plaintiff to be violently attacked by her schizophrenic son.

*Third*, plaintiff's additional state law claims – duress and aiding and abetting an assault and battery – fail to state a claim under Indiana tort law.

## BACKGROUND

In December 2006, the State's Family and Social Services Administration (FSSA), which administers Medicaid benefits within the State of Indiana, entered into a contract with IBM to modernize the system (the Master Services Agreement, or MSA).  (Ex. A, MSA)[1]  In accordance with that contract, IBM and a group of subcontractors assisted in processing the State's Medicaid benefits applications.   Under the contract, the State (not IBM) maintained responsibility for eligibility determinations.  (Ex. A, MSA § 3.1.1 (the "State shall have and shall retain final responsibility for eligibility determinations under each of the Programs"))   Plaintiff's claims against, and purported relationship with, IBM are premised entirely on IBM's contract with the State to which she was not a party or beneficiary.  (Compl. Introduction; *id.* ¶ 6)

Plaintiff's son (Seth) was placed on Medicaid after an incident on April 15, 2007, when he stripped naked and burned his clothes in the middle of the Earlham College campus.  (Compl. ¶¶ 8-9, 17)  Seth was diagnosed as schizophrenic, and his mother was appointed as his Guardian.  (Compl.  ¶¶ 9, 16)  After the April 15 incident, Seth's violent and psychotic behavior continued.  As a result, Seth was incarcerated for extended periods and spent a significant amount of time in psychiatric hospitals.  (Compl. ¶ 14)  During one period of incarceration, Seth gouged out his eye with a toothbrush.  (Compl. ¶ 15)

To maintain his Medicaid benefits, Seth was required to attend a re-eligibility appointment at some point prior to January 18, 2009.  (Compl. ¶¶ 18-19)  That deadline was

---

[1]   This Court can take judicial notice of the MSA, which is a public document of the State.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (stating that "Despite the express language of Fed. R. Civ. P. 12(b), we recently held that '[t]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment" and holding that the lower court properly took judicial notice of public court documents) (internal citations omitted); *Hanover Grp., Inc. v. Manufactured Home Cmtys. Inc.*, 2000 WL 1124877, at *3 (S.D. Ind. July 12, 2000) ("facts subject to determination by judicial notice may be considered when a court must resolve a motion pursuant to [] Rule 12(b)(6)").

5

missed by plaintiff (as his Guardian) and by Seth since he was then incarcerated.  (Compl. ¶ 19)
Seth's Medicaid benefits lapsed on January 29, 2009.  (Compl. ¶ 29)

After the expiration of his Medicaid benefits, Seth moved into plaintiff's home.  (Compl.
¶¶ 30, 32)  At that time, "Seth had seemed quiet and introspective and withdrawn, and there was
no hint that a violent outbreak might occur."  (Compl. ¶ 32)  However, on May 15, 2009, Seth
entered plaintiff's bedroom and violently attacked her, including gouging out her eye and
breaking several bones.  (Compl. ¶ 22)  Plaintiff alleges that the State's and IBM's refusal to
process her son's Medicaid application and provide him with benefits  "was the sole cause of the
violence" that led to her injuries.  (Compl. ¶ 36)

Plaintiff brings claims for violation of her civil rights under § 1983 and for negligence,
duress, aiding and abetting an assault and battery,[2] and the negligent infliction of physical,
mental, and emotion injury.  None of these claims survive a motion to dismiss.

## STANDARD OF REVIEW

Plaintiff's compliant should be dismissed for failure to state a claim upon which relief
can be granted.  Fed. R. Civ. P. 12(b)(6); *Intelecom, Inc. v. Cable & Wireless USA, Inc*., 2000
WL 33309374, at *2 (S.D. Ind. Oct. 10, 2000).   "Dismissal is appropriate if . . . it appears
beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief." *Bowers
v. Fédération Internationale de L'Automobile*, 489 F.3d 316, 320 (7th Cir. 2007); *Hickey, III v.
O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002).   Legal conclusions that are not sufficiently
supported by the facts fail to state a claim.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).
Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

---

[2]   As discussed below, plaintiff does not allege that IBM aided and abetted an assault and battery in her
"Claims for Relief" section, but rather mentioned it briefly in her introductory section.  IBM contends
that the claim is not properly pled, but if this Court finds otherwise, the claim should nonetheless be
dismissed along with plaintiff's other claims.

6

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## ARGUMENT

I.    **PLAINTIFF'S § 1983 CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH THAT SHE WAS DENIED A RIGHT SECURED BY THE CONSTITUTION.**

To establish a claim under § 1983, plaintiff must allege both that she was deprived of a right secured by the Constitution or under federal law, and that the alleged deprivation was committed under the color of state law.[3]  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); 42 U.S.C. § 1983.  Plaintiff's § 1983 claim must be dismissed because plaintiff has not alleged that she was deprived of a Constitutional right.

### A.    Plaintiff Has Not Alleged A Claim Under The Equal Protection Clause.

In paragraph 48 of her complaint, plaintiff states generally that IBM denied her "equal protection of the laws." (Compl. ¶ 48)  To the extent that plaintiff relies on that conclusory statement to state a § 1983 claim, it fails.  Indeed, to state a claim under the Equal Protection Clause, plaintiff must plead facts that show intentional discrimination because of plaintiff's membership in a particular class.  *See Herro v. City of Milwaukee*, 44 F.3d 550, 552 (7th Cir. 1995) (dismissing the plaintiff's claim that a council member directed animosity towards him because "personal vendettas are hardly the type of allegations necessary to sustain an equal protection claim"); *Herdt v. Civil City of Jeffersonville, Ind.*, 10-140, 2011 WL 1600518, at *2 (S.D. Ind. Apr. 27, 2011) ("[W]hen pleading an equal protection claim under the Constitution,

---

[3]    IBM maintains that it was not acting under the color of state law by simply processing Medicaid applications for the State of Indiana.  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of [ ] private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").  IBM need not raise this argument at this time, however, as plaintiff's claims fail for the independent reason that they do not state a claim.

7

the Plaintiff must do something more than mere notice pleading and must plead facts which are sufficient to establish that there is a plausible claim.").  There are no such allegations here.  Thus, any attempt by plaintiff to state a § 1983 claim based on IBM's purported violation of the Equal Protection Clause cannot stand.

**B.    The Due Process Clause Does Not Protect Citizens Against Violence Inflicted By Private Actors.**

**1.    Plaintiff's due process claim is precluded by *DeShaney*.**

Plaintiff claims that IBM violated her due process rights and ignored her safety by failing to process her son's Medicaid application.  Plaintiff's claim fails as a matter of law.  Indeed, as the United States Supreme Court held in *DeShaney*, 489 U.S. 189, a person does not have a due process right to be protected by the government against violence inflicted by a private actor.  In *DeShaney*, the mother of a child who had been beaten by his father brought a § 1983 due process claim against social workers and local officials who had received complaints that the child was being abused by his father but had not removed him from his father's custody.  *Id.* at 192-93.  In holding that the state had no constitutional duty to protect the child from his father after receiving reports of possible abuse, the Court stated:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause . . . forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. *Id.* at 195.

This principle has been consistently followed by courts, including this Circuit.  For instance, in *Waubanascum v. Shawano Cnty*, 416 F.3d 658, 665 (7th Cir. 2005), the plaintiff, a teenager who was sexually abused while placed in foster care, brought a § 1983 claim against the county for failing to monitor his abuser's foster care license.  The Seventh Circuit held that the county was entitled to judgment as a matter of law, as the plaintiff could not establish "that

8

Shawano County owed [plaintiff] a constitutional duty as defined under case law, let alone that the county violated that duty." *Id.* at 671; *see id.* at 665 ("a state ordinarily has no constitutional duty to protect private citizens from doing harm to each other, so the state's failure to protect an individual from private injury does not violate that individual's due process rights"); *see also Severson v. Bd. of Trustees of Purdue Univ.*, 777 N.E.2d 1181, 1197 (Ind. Ct. App. 2002) (the plaintiffs' § 1983 claim against a university failed as a matter of law because the university did not have a duty to protect a residential advisor from a student's criminal acts).

2.      **The limited exceptions to *DeShaney* do not apply.**

The Seventh Circuit recognizes two limited exceptions to the *DeShaney* holding. Neither applies in this case. Under the first exception, the state must protect individuals with whom it has a "special relationship." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) ("when a state has custody over a person, it must protect him because no alternate avenues of aid exist"). The basis of the special relationship is that "the state had affirmatively acted to limit a person's ability to protect him or herself, as in the case of incarceration or institutionalization." *Robertson v. Office of Shelby County Sheriff*, 2003 WL 21696540, at *2 (S.D. Ind. July 14, 2003); *cf. J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990) (a "special relationship" does not exist where a person is able "to provide [her own] basic human needs like food, clothing, shelter, medical care, and reasonable safety"). For purposes of a "special relationship," courts examine the relationship between the state and the *plaintiff*, not the state and the third party. *See, e.g., Robertson*, 2003 WL 21696540, at *2 (corrections officer who was raped by a prisoner did not fall under the "special relationship" exception); *Hodgson v. Miss. Dept. of Corrections*, 963 F. Supp. 776, 794 (E.D. Wisc. 1997) ("the special relationship required by *DeShaney* did not exist between Monique Hodgson [the plaintiff's decedent] and the Mississippi corrections officers"); *Severson*, 777 N.E.2d at 1198 (plaintiff's decedent who was

9

murdered by a college student did not have a "special relationship" with the police).  Plaintiff here has not alleged that she was under the control or custody of IBM (or the State) and does not fall under the "special relationship" exception.

The second limited exception, the "state-created danger" exception, provides liability where the "state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."  *Buchanan-Moore*, 570 F.3d at 827.  Only in rare and egregious circumstances does this exception apply.  *See Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003) (cases in which the Seventh Circuit has found the "state-created danger" exception to apply are "rare and often egregious").  Indeed, the state-created exception requires the plaintiff to satisfy a three-part test (the *King* test): (1) the state must create or increase a danger faced by an individual by the state's affirmative acts; (2) the state's failure to protect the individual from the danger must be the proximate cause of the injury to the individual; ***and*** (3) the state's failure to protect the individual must shock the conscience.  *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007); *see also Sandage v. Bd. of Commissioners of Vanderburgh Cnty., Ind.*, 2008 WL 345977, at *4 (S.D. Ind. Feb. 6, 2008) (all three parts of the *King* test must be met for a plaintiff to successfully state a claim under the "state-created danger" doctrine), *aff'd* 548 F.3d 595 (7th Cir. 2008).  Plaintiff's complaint does not satisfy the *King* factors.

*First*, plaintiff does not allege that IBM took an *affirmative act* that increased her risk of danger.  Rather, plaintiff alleges that IBM failed to act – *i.e.,* that IBM did not properly process Seth's Medicaid benefits.  The mere *failure to act* is insufficient to satisfy the first prong of the *King* test.  *Waubanascum*, 416 F.3d at 665 ("inaction by the state in the face of a known danger is not enough to trigger the obligation to protect private citizens from each other"); *Stevens v.*

10

*Umsted*, 131 F.3d 697, 705 (7th Cir. 1997) ("affirmative conduct is required and mere inaction is insufficient").  And, even assuming IBM's conduct could constitute an affirmative act, it did not increase the danger to plaintiff.  As plaintiff alleges, Seth was violent both before and after the alleged failure to process the benefits application.  (Compl. ¶¶ 13, 15, 33)  Just months before he gouged out his mother's eye, he gouged out his own.  (Compl. ¶ 15)   Indeed, in a factually similar case, the Seventh Circuit held that the "state-created danger" exception did not apply:

> As the respondents in *DeShaney* did not make Joshua's father violent, Defendants here did not create or encourage Travis Moore's violent tendencies.  The danger to the decedents was created by the already-existing, violent nature of Travis Moore – not his temporary work release.

*Sandage*, 2008 WL 345977 at *5 (dismissing plaintiff's § 1983 claim for failure to state a claim).

*Second*, plaintiff does not allege that IBM proximately caused the injury.  *King*, 496 F.3d at 818.  The state-created danger theory requires that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense.  *Id*.  As discussed more fully below, plaintiff's complaint does not allege facts suggesting that IBM knew that plaintiff, as opposed to other individuals, faced any specific danger from Seth as a result of the alleged failed to process Seth's Medicaid benefits.  *See Buchanen-Moore*, 570 F.3d at 828.

*Third*, plaintiff cannot establish that IBM's conduct "shocks the conscience."  Courts are clear that ordinary negligence (what is alleged here) is "categorically beneath the threshold of constitutional due process."  *King*, 496 F.3d at 819 (school was not liable under state-created danger exception where any fault in creating a school policy was simple negligence in not considering all circumstances that might arise); *see Sandage*, 2008 WL 345977, at *6 (the court must make sure that the conduct is more culpable than mere negligence).

Ultimately, plaintiff cannot establish that either limited exception to *DeShaney* applies.  Her § 1983 claim must fail as a matter of law.

11

### C.    To The Extent Plaintiff Alleges A Procedural Due Process Claim, It Fails As A Matter Of Law.

Plaintiff does not and cannot allege a procedural due process claim.  Plaintiff does not allege that she was a Medicaid beneficiary.  Nor does her complaint include any allegation that IBM somehow erred in processing her own Medicaid benefits.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").  To the extent that this Court believes that plaintiff has alleged any facts speaking to a procedural due process claim, IBM incorporates hereto the arguments made by the State defendants in their motion to dismiss.

## II.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE IBM DID NOT OWE A DUTY TO PLAINTIFF.

To state a claim for negligence, plaintiff must establish three elements:

> (1) a duty on the part of the defendant to conform his conduct to the standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

The analysis of whether there was a duty on the part of the defendant involves a balancing of three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns."  *Id.* at 996.  The existence of a duty is a question of law appropriate to be decided on a motion to dismiss.  *Id.* at 995.  Plaintiff does not allege facts sufficient to establish a duty under any of the three balancing factors, and her negligence claim must be dismissed.[4]

---

[4]    Because plaintiff cannot state a claim for negligence, her negligent infliction of physical, mental, and emotional injury claim must also fail.  *See Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185, 188 (Ind. Ct. App. 1998) (to establish a claim for negligent infliction of emotional distress, plaintiff must prove the elements of negligence, including duty).

12

1922121011.

A. **Plaintiff Did Not Have A "Relationship" With IBM Sufficient To Establish A Legal Duty.**

A duty of reasonable care is "not, of course, owed to the world at large, but arises out of a relationship between the parties." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004). In determining whether a relationship exists that would impose a duty, courts consider the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship. *Baxter v. ISTA Ins. Trust*, 749 N.E.2d 47, 55 (Ind. Ct. App. 2001).

Here, plaintiff alleges no facts to demonstrate that she was in a relationship with IBM for purposes of her negligence claim. Plaintiff does not allege that she was in a contractual relationship with IBM. Nor does she allege sufficient facts to establish a *direct* relationship with IBM of any sort. *See Williams*, 809 N.E.2d at 476-77 (the plaintiff injured in a car accident did not have a direct relationship with the manufacturer of the other driver's cell phone). There is simply no relationship between plaintiff and IBM that would create a duty on the part of IBM.

B. **IBM Could Not Have Reasonably Foreseen That Its Alleged Failure To Process Seth's Medicaid Benefits Would Cause Plaintiff's Injuries.**

For plaintiff's negligence claim to survive, this Court must determine that Seth's attack of plaintiff was reasonably foreseeable to IBM when it allegedly failed to process Seth's Medicaid benefits. In other words, plaintiff must allege facts establishing *both* that she was a foreseeable victim *and* that the injuries inflicted on her were reasonably foreseeable. *Webb*, 575 N.E.2d at 997; *Baxter*, 749 N.E.2d at 56 (the duty of reasonable care "is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty"). Plaintiff's complaint includes no such supporting allegations.

The Indiana Supreme Court's decision in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), is instructive. There, a physician prescribed steroids to his patient, who had a history of violence towards his wife. When the wife attempted to terminate her relationship with the patient, the

13

patient shot and injured the wife's brother-in-law.  The Supreme Court of Indiana held that the physician did not owe a duty to the brother-in-law because it was not foreseeable that "prescribing of the medication would put [the patient] in such a state that he would use a weapon to cause harm to another."  *Id.* at 997.  The court explained that the causal connection between the use of steroids and violent behavior, if any, was not sufficiently established to create a legal duty.  *Id.*; *see also Williams*, 809 N.E.2d at 478 (cell phone manufacturer did not owe a duty to a third party who was injured when a cell phone customer collided with the third party's car while using her cell phone).

Plaintiff's negligence claims are precluded by cases such as *Webb*.  That is, IBM could not have reasonably foreseen that its failure to reprocess a Medicaid application would result in plaintiff (a third party non-Medicaid beneficiary) being violently attacked by her schizophrenic son.  Indeed, plaintiff alleges only an attenuated, unpredictable chain of events:  (1) Seth and his Guardian missed the re-eligibility appointment (Compl. ¶ 19); (2) the State and IBM failed to reprocess Seth's Medicaid application (Compl. ¶¶ 20, 22); (3) Seth's Medicaid coverage expired (Compl. ¶ 21); (4) Seth's medications eventually wore off (Compl. ¶ 25); (5) plaintiff did not pay for Seth's medication (Compl. ¶ 31); (6) plaintiff took Seth into her house (Compl. ¶ 32); and (7) Seth attacked plaintiff (Compl. ¶ 33).  Moreover, plaintiff's injuries occurred more than three months after IBM allegedly refused to process Seth's Medicaid benefits – making it even less likely IBM would foresee the attack.  *See Nance v. Holy Cross Counseling Grp.*, 804 N.E.2d 768, 772 (Ind. Ct. App. 2004) (injury that occurred at least six months after the decedent was evaluated by the defendant was not reasonably foreseeable); *Bailor v. Salvation Army*, 51 F.3d 678, 684 (7th Cir. 1995) (injury that occurred three days after the third party left the defendant's

14

halfway house was not foreseeable "at such a time and distance").  Plaintiff cannot credibly argue, and this Court cannot find, that plaintiff's injuries were reasonably foreseeable to IBM.[5]

###   C.     Public Policy Considerations Should Preclude This Court From Finding That IBM Owed Plaintiff A Duty.

Public policy considerations also weigh against imposing a duty in this case.   In discerning public policy, courts "look to federal and state constitutions, the legislature, and the judiciary," *Baxter*, 749 N.E.2d at 56, and consider various factors, such as convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer, *Williams*, 809 N.E.2d at 478.  Here, plaintiff seeks to establish a duty between a private contractor and the victim of a Medicaid beneficiary's criminal acts – a duty that is not present in the Indiana or United States Constitutions, Indiana statutes, or Indiana case law.  *See Baxter*, 749 N.E.2d at 56-57 (no duty to protect a subjection right, where the duty did not appear in any constitutional provision, Indiana statute, or Indiana case).  This Court should not be forced to create a new duty to support plaintiff's claims.

Indeed, the creation of a duty in this case could cripple the State's Medicaid system.  The Medicaid application process already requires the State to consider a number of individualized factors when processing Medicaid applications.  If the State and its contractors were forced to consider the potential harm to third parties from criminal acts every time a Medicaid claim was processed or considered, the State would be required to consider an enormous amount of additional information. And, more troubling, liability in a case such as this could open the flood

---

[5]    Indeed, plaintiff acknowledges that even she did not foresee Seth's violent behavior, noting that before Seth moved into her house, he "seemed quiet and introspective and withdrawn, and there *was no hint* that a violent outbreak might occur" (Compl. ¶ 32 (emphasis added)).  *See, e.g., Stockberger v. United States*, 225 F. Supp. 2d 949, 964 (S.D. Ind. 2002) (employee's car accident was not reasonably foreseeable "in light of the numerous appropriate conversations and apparent stability of [his] condition upon his departure").

gates to litigation – any time a Medicaid applicant is denied benefits and then engages in criminal wrongdoing.

## III.   PLAINTIFF'S REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's complaint alleges two additional state law causes of action: aiding and abetting an assault and battery, and duress.   Both should be dismissed.

### A.      Plaintiff's Aiding And Abetting Claim Fails To State A Claim.

In the introductory section to her complaint, plaintiff briefly alleges that "Defendants are liable for the tort[ ] of aiding and abetting an assault and battery."  (Compl. p. 1)  Plaintiff does not again include this claim in the "Claims for Relief" section of her complaint.  (Compl. ¶¶ 46-49)  Assuming that plaintiff included this claim as a cause of action against IBM, it should be dismissed for failure to state a claim.  Indiana Code § 35-41-2-4 provides *criminal* liability for "a person who knowingly or intentionally aids, induces or causes another person to commit and offense."  *See, e.g., Stevens v. State*, 422 N.E.2d 1297, 1301-02 (Ind. Ct. App. 1981) (defendant was criminally liable for aiding and abetting a battery).  There is, however, no corresponding *civil* provision for aiding and abetting.  *See Woodard v. Jackson*, 2004 WL 771244, at *10 (S.D. Ind. Mar. 25, 2004) ("The claim for 'civil aiding and abetting' [a conspiracy] is not a recognized cause of action in Indiana.").

To the extent plaintiff relies on Section 876 of the Restatement (Second) of Torts, her claim nonetheless should fail.  Section 876 states:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Plaintiff provides no factual allegations that would meet these requirements.  There are no allegations that IBM acted in concert with Seth, that IBM acted pursuant to a common design with Seth, or that IBM gave substantial assistance or encouragement to Seth.  Thus, even assuming that Indiana courts recognize a civil cause of action for aiding and abetting an assault and battery, plaintiff's claim should be dismissed for failure to state a claim.

### B.    Plaintiff's Duress Claim Fails Because Duress Is A Defense Under Indiana Law, Not A Cause of Action.

This Court similarly should dismiss plaintiff's duress claim, as Indiana law does not recognize duress as an independent tort cause of action.  Under Indiana law, duress is a *defense* raised by a party in criminal or contract cases.  *See, e.g., Trzeciak v. State Farm Fire & Casualty Co.*, 2011 WL 831126, at *4 (N.D. Ind. Mar. 1, 2011) ("contractual provisions may sometimes be avoided if the claimant can prove fraud, duress, misrepresentation, adhesion, or illusory contract"); *Cerna v. Prestress Services Ind., LLC*, 2011 WL 1884547, at *5 (N.D. Ind. May 18, 2011) ("Like other contracts, however, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability."); *Lohmiller v. State*, 884 N.E.2d 903, 910 n.7 (Ind. Ct. App. 2008) ("Indiana Code section 35–41–3–8 provides that it is a defense that the person who engaged in the prohibited conduct 'was compelled to do so by threat of imminent serious bodily injury to himself or another person.'").  Duress is not a stand-alone tort cause of action.  Accordingly, plaintiff's duress claim against IBM should be dismissed.

### C.    Plaintiff's Miscellaneous State Law Claims Fail.

Finally, plaintiff alleges a number of "negligence" causes of action in her "Claims for Relief" that are not distinct causes of action under Indiana law.  For example, plaintiff alleges that IBM caused the negligent infliction of physical and mental injury.  (Compl. ¶ 49)  To the

17

extent that these claims are not dismissed for the reasons discussed above (as plaintiff cannot properly state a claim of negligence), they should be dismissed for failure to state a cause of action under Indiana law.

## CONCLUSION

For each of the foregoing reasons, IBM respectfully requests that this Court grant its Motion to Dismiss plaintiff's complaint in its entirety with prejudice.

Dated:  July 5, 2011                            Respectfully submitted,


                                                */s/ Andrew W. Hul*
                                                Andrew W. Hull (#11218-49)
                                                Laurie E. Martin (326877-49)
                                                HOOVER HULL LLP
                                                111 Monument Circle, Suite 4400
                                                P.O. Box 44989
                                                Indianapolis, IN 46244-0989
                                                Telephone: (317) 822-4400

                                                Steven D. McCormick, P.C.
                                                Anne M. Sidrys, P.C.
                                                Wendy Netter Epstein
                                                Diana M. Watral
                                                KIRKLAND & ELLIS LLP
                                                300 North LaSalle
                                                Chicago, Illinois  60654
                                                Telephone: (312) 862-2000

                                                *Attorneys for Defendant International*
                                                *Business Machines Corporation*

1922121011.

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that a copy of the foregoing has been served upon the following by the court's ECF system this 5th day of July, 2011:

Brent Welke                     Adam Clay
Welke Law Firm             Attorney General's Office
brentwelke@att.net           adam.clay@atg.in.gov

Patricia Hubr Strachan
Attorney General's Office
patricia.strachan@atg.in.gov

                                         */s/ Andrew W. Hull*

19